IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAMELA CYRILIEN, *Plaintiff*, | § § § |
| v. | §  CIVIL ACTION NO. 4:21-CV-02523 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *Defendant.* | § § § § § |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In response to Plaintiff Pamela Cyrilien's First Amended Complaint (ECF No. 8), the Texas Department of Criminal Justice ("TDCJ") files its Motion for Summary Judgment.

### I.    NATURE AND STAGE OF THE PROCEEDING

Cyrilien originally sued TDCJ for disability discrimination under the ADA and § 504 of the Rehabilitation Act. ECF No. 8. TDCJ filed a motion to dismiss the ADA claim, which was granted after an oral hearing on December 15, 2021. The only claim moving forward is Cyrilien's claim of disability discrimination under § 504 of the Rehabilitation Act. Cyrilien alleges that TDCJ violated the RA by excluding her from working at her job and denying her the monetary compensation and other benefits solely on the basis of her cancer-based disability. ECF No. 8 at 3.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The nonmovant's burden is not satisfied by "conclusory allegations, speculation, and unsubstantiated assertions." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Rather, the plaintiff must show admissible evidence that creates a fact issue as to each element of her claim. *Id.* Although all reasonable inferences are drawn in favor of the nonmovant, "a mere scintilla of evidence in support of plaintiff's

position will not do, nor will some metaphysical doubt as to the material facts." *Funches v. Progressive Tractor & Implement Co., LLC*, 905 F. 3d 846, 849 (5th Cir. 2018) (internal quotes omitted).

Here, Cyrilien cannot meet her summary judgment burden and, for this reason, TDCJ respectfully asks the Court to dismiss her claims with prejudice.

## II.     EXHIBITS

**Exhibit A: Deposition of Pamela Cyrilien**
**Exhibit B: Administrative Assistant IV- Job Description (Bates Nos. 587–89)**
**Exhibit C: Claim Form for long-term disability benefits (Bates No. 586)**
**Exhibit D: 3/29/2019 Health Care Provider Statement ("HCPS") (Bates No. 290)**
**Exhibit E: TDCJ Notification of Medical and Family Leave (Bates No. 313–14)**
**Exhibit F: June 5, 2019, Provider Statement (Bates No. 292)**
**Exhibit G: TDCJ Sick Leave Pool Application for Withdrawal (Bates Nos. 317–19)**
**Exhibit H: FMLA Certification from Health Care Provider (Bates Nos. 298–301)**
**Exhibit I: "TIPP" Documentation**
**Exhibit J: 11/12/2019 HCPS (Bates No. 303)**
**Exhibit K: Social Security Administration Disability Documentation**
**Exhibit L: FMLA Designation Notice (Bates Nos. 322–24)**
**Exhibit M: Physician's Statement of Work Capacity and Impairment (Bates Nos. 305–307)**
**Exhibit N: Expiration of "LWOP" Notification (Bates No. 360)**
**Exhibit O: Personnel Accounting Information (Bates No. 429)**
**Exhibit P: EEOC Charge of Discrimination (Bates Nos. 284–85)**
**Exhibit Q: TDCJ IOC re: Accommodations (Bates No. 362)**
**Exhibit R: Separation Documentation (Bates Nos. 326–27)**
**Exhibit S: TDCJ PD-46 "Medical and Parental Leave" Policy (Bates Nos. 1422–1464)**

## III.     STATEMENT OF MATERIAL FACTS

Cyrilien was hired to work as an Administrative Assistant at the TDCJ Pack Unit on November 7, 2016. Ex. B; Ex. C. On December 14, 2018, she was diagnosed with stage 2-A breast cancer. ECF No. 8. Cyrilien began chemotherapy treatments one time per week on March 29, 2019, for 12 weeks. Ex. D. Cyrilien's last day of appearing for work at TDCJ was May 30, 2019. Ex. C. On June 3, 2019, her request for Family Medical Leave ("FML") status was approved, and she had 72 hours of vacation leave and 37 hours of sick leave remaining. Ex. E. On June 5, 2019, she turned in a doctor's note stating she had a severe pain and leg weakness due to chemo, preventing her from

ambulating or prolonged standing. Ex. F. On June 7, 2019, she applied to withdraw leave time from the sick pool. Ex. G. Her request was approved for a total of 400. *Id.*

On June 12, 2019, Cyrilien turned in a Health Care Provider Statement ("HCPS") stating that she is "unable to perform job functions due to side effects of chemo. Incapacitated 12/14/18–12/14/19" and that she will need to work "0 days per week" until December 30, 2019. Ex. H. On June 17, 2019, Cyrilien applied for long-term disability benefits. Ex. I. At the time of her application, Cyrilien still had 129 hours of accrued sick leave remaining. Ex. C.

On November 12, 2019, a HCPS limited Cyrilien's physical abilities, such as her ability to stand and walk, and excused her from work through her next follow-up appointment on February 11, 2020. Ex. J. On November 27, 2019, Cyrilien began to receive long-term disability payments from the Texas Income Protection Program ("TIPP") and from the Social Security Administration. Ex. I; Ex. K. On December 9, 2019, Cyrilien's FML was exhausted, and her payroll status changed to Leave Without Pay ("LWOP"). Ex. L. On January 24, 2020, Cyrilien's attending physician provided a statement in support of her disability claim recommending that she stay home from work because she was considered "totally impaired from working" as of June 23, 2019. Ex. M. The physician estimated the date of return to full duty to be over another year away, on February 24, 2021. *Id.*

On March 19, 2020, Lora Cox, a TDCJ HR representative, sent Cyrilien an "Expiration of Leave Without Pay Notice" informing her that if she is able to return to TDCJ employment at a later date, she should re-apply. Ex. N. According to Cyrilien, she then called Ms. Cox and verbally requested an accommodation of light duty, but claims she was denied. Ex. A (Cyrilien Dep. 25:8–26:8). Cyrilien claims she also called Ms. Stubblefield in HR to request an accommodation of "nothing specific," but was denied. *Id.* (Cyrilien Dep. 26:13–27:19). Pursuant to TDCJ's policy regarding leave time, Cyrilien was separated from employment with TDCJ on March 20, 2020, after she exhausted nearly ten months of leave time. Ex. O; Ex. S.

3

## IV. ARGUMENT AND AUTHORITY

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattret,* 77 U.S. 317, 322 (1986).

### A. Cyrilien is not a "qualified individual" under the Rehabilitation Act.

To state a prima facie case under the RA for failure to accommodate, a plaintiff must allege: (1) that she is a qualified individual within the meaning of the Americans with Disabilities Act (ADA);[1] (2) that she is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of her disability. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004); *see* 42 U.S.C. § 12132.

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of [the RA], consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

In determining whether a person is "qualified," the court examines "(1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills and the like; and (2)

---

[1] Both the Rehab Act, 29 U.S.C. § 794(a), and the ADA, 42 U.S.C. § 12112(a), "prohibit discrimination on the basis of an employee's disability." *Singhal v. Baylor Coll. of Med.*, No. 4:19-CV-1362, 2021 U.S. Dist. LEXIS 67677, at *24–25 (S.D. Tex. Mar. 31, 2021) (quoting *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 399 (5th Cir. 2012)). "[T]he Rehabilitation Act adopts the standards used in determining claims under the ADA." *Id.*; 29 U.S.C. § 794(d). ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act, …as such sections relate to employment.").

4

whether the individual can perform the essential job functions, with or without reasonable accommodation." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997) (citing 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m)). Therefore, to avoid summary judgment the plaintiff must demonstrate "that she could either (1) 'perform the essential functions of the job in spite of [her] disability,' or (2) that 'a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of her job.'" *Cannon v. Jacobs Field Servs. N.A., Inc.*, 813 F.3d 586, 592 (5th Cir. 2016) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)). A function is "essential" if it bears "more than a marginal relationship" to the employee's job. *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993), *holding modified on other grounds as discussed in Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002) (per curiam).

Many circuits, including the Fifth Circuit, have consistently deferred to an employer's judgment that attendance is an essential function of the job in finding that an employee's inability to meet attendance standards renders the employee "unqualified" under the ADA. *See Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012) (concluding that the plaintiff was not "qualified" because he "was not able to come to work and had not been in the office for months at the time of his discharge."); *Crews v. Dow Chemical Co.*, 287 F. App'x 410, 412 (5th Cir. 2008) (relying on the documentation submitted by the plaintiff's physician that the plaintiff could not "return to work in the foreseeable future" as evidence that the plaintiff could not perform the essential functions of her job, and was thus not a "qualified individual with a disability"); *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual."); *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (concluding that the plaintiff was "not 'otherwise qualified'" because "it was an essential function of his job, as a member of the team, that [the plaintiff] be in the office, . . . and that he work a full schedule," and noting that the plaintiff did not arrive at work "often enough to perform the essential functions of the

5

job"); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (recognizing that "an essential element of any . . . job is an ability to appear for work . . . and to complete assigned tasks," and therefore concluding that "[b]ecause [the plaintiff] could not attend work, he [was] not a 'qualified individual with a disability' under the ADA."); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) ("[R]egardless of the fact that [the plaintiff] possessed the necessary . . . skills and performed well when she was at work, [her] frequent absences rendered her unable to function effectively," precluding her from being a "qualified individual with a disability"); *Fuentes v. Krypton Solutions, LLC*, No. 4:11cv581, 2013 U.S. Dist. LEXIS 48739, 2013 WL 1391113, at *4 (E.D. Tex. April 4, 2013) (noting that, because the plaintiff "was unable to come to work at the time of the adverse employment action," he could not perform an essential function of his job); *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 522 (N.D. Tex. 2009) (finding it "undisputed that as of the time of [the plaintiffs] discharge, [she] could not work at all," and because she "could not attend work, she [was] not a 'qualified individual with a disability' under the ADA.").

In this case, Cyrilien herself admits that she was unable to perform the essential functions of her physically demanding and "intense" job. Ex. A (Cyrilien Dep. 22:12–22) ("At the time when I was sick, I wasn't able to perform any job…I couldn't perform that job. I wasn't even able to walk to be honest."); *see id.* (Cyrilien Dep. 40:4–41:10) (describing her limitations such as walking and standing); *see also id.* (Cyrilien Dep. 15:3–16:2, 16:21–18:20, 19:10–21:3) (explaining the essential functions of her job to include walking, being able to pass a physical fitness test, and defend herself and others amongst 50 inmates); *see also* Ex. P (stating she was not "able to walk or perform any hazardous duties at the prison or even perform my yearly in service recertification…"). Since her diagnosis, there was no time that Cyrilien was physically able to return to her former position as an Administrative Assistant IV. Ex. A (Cyrilien Dep. 39:12–40:12). Even today, Cyrilien could not return to work. *Id.* (Cyrilien Dep. 51:5–11) ("Absolutely not that position…I can't. I can't do it. I know I can't."). Nor is there evidence

of a health care provider's note allowing her to return to work without restricting the essential functions of her job. Ex. B (Job description); *see also* Ex. A (Cyrilien Dep. 36:25–37:8) (explaining that she was under doctor's orders not to return to work even two years after she began receiving long-term disability benefits in November of 2019).

Additionally, by applying for long-term disability nine months before her separation from TDCJ, Cyrilien admits that she was unable to work at all due to her disability. *See* Ex. A (Cyrilien Dep. 36:7–37:8) (stating the reason she applied for long-term disability in June of 2019 was because she "needed more time to heal"). Cyrilien began receiving long-term disability in November of 2019, four months before her separation from TDCJ. Ex. I. Even after two years of receiving long-term disability, Cyrilien began to earn Social Security Disability Benefits because she was still under doctor's orders restricting her from returning to work. Ex. A (Cyrilien Dep. 36:25–37:8). A plaintiff who has submitted a "sworn assertion in an application for disability benefits that she is… 'unable to work' will appear to negate an essential element of her ADA case"—namely, that she can perform the essential functions of her employment position— and as such, "must proffer a sufficient explanation" to account for the "apparent contradiction." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 483 (5th Cir. 2001). Ex. I; Ex. K. Here, Cyrilien simply admits that she was not able to work and has no sufficient explanation to warrant a reasonable juror's conclusion that she could perform the essential functions of her job. *Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 473 (S.D. Tex. 2010) (citing *Cleveland*, 526 U.S. at 805–07). As such, she cannot state a prima facie case under the RA.

1. **Failure to Accommodate Claim**

Only if the court determines that the plaintiff cannot perform the essential functions of the job does the court consider whether a reasonable accommodation by the employer would enable her to perform those functions. *Chandler*, 2 F.3d at 1393–94. The ADA requires that the employer and employee engage in an interactive process to identify a reasonable accommodation. *EEOC v. Chevron*

7

*Phillips Chem. Co., LP*, 570 F.3d 606, 622 (5th Cir. 2009). The ADA defines "reasonable accommodations" to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). However, the ADA does not require an employer to transfer from the disabled employee any of the essential functions of her job in order to make reasonable accommodation for her disability. *Barber v. Nabors Drilling, USA, Inc.*, 130 F.3d 702, 709 (5th Cir. 1997). Critically, a "[r]easonable accommodation does not require an employer to wait indefinitely for the employee's medical conditions to be corrected." *Gonzalez v. UPS*, No. 5:15-CV-986-RCL, 2018 U.S. Dist. LEXIS 167528, at *34 (W.D. Tex. Sep. 28, 2018) (citing *Rogers*, 87 F.3d at 760).

Additionally, because "the ADA requires employers to reasonably accommodate limitations, not disabilities," it is incumbent upon the employee who needs the accommodation to inform the employer that a limitation exists and that an accommodation is needed. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (quoting *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)). This is especially true "[w]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer…". *Taylor*, 93 F.3d at 165. Further, the ADA provides a right only to "reasonable accommodation[s]," not to "the employee's preferred accommodation[s]" or to accommodations that "would impose an undue hardship" on the employer. *Griffin*, 661 F.3d at 224 (quoting *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)); *Taylor*, 93 F.3d at 162; *Molina v. DSI Renal, Inc.*, 840 F.Supp.2d 984, 1001 (W.D. Tex. 2012).

Here, Cyrilien's unspecified requested accommodations are not reasonable. Due to her chemotherapy, Cyrilien had limitations on walking, bending, stooping, lifting, grabbing things, holding

things, and using her hands, all side effects that cannot just be inferred by her employer. Ex. A (Cyrilien Dep. 41:1–8). Shortly after she was separated from TDCJ, Cyrilien suffered a stroke, leaving her whole left side and her fingers numb, she could not pick up a pencil and was not able to walk or stand for more than 15 to 30 minutes. *Id.* (Cyrilien Dep. 42:6–43:21). These limitations still exist today, even after attending rehabilitation. *Id.* There is no accommodation TDCJ could give her to enable to perform the essential functions of her job. *See* Ex. B.

Knowing she would ultimately run out of leave time due to her condition, Cyrilien applied for long-term disability benefits three months before she was separated from TDCJ. Ex. A (Cyrilien Dep. 36:7–24). Cyrilien acknowledges that "no one can really say when you're going to heal from cancer" and even within two years of being placed on long-term disability, Cyrilien was still under her doctor's orders not to return to work. *Id.* (Cyrilien Dep. 36:15–37:8). Seemingly, the only accommodation that would enable Cyrilien to continue to work for TDCJ would be indefinite leave time, which is *per se* unreasonable. *Allen v. Babcock & Wilcox Tech. Servs. Pantex, LLC*, No. 2:12-cv-00225-J, 2013 U.S. Dist. LEXIS 146251, at *18–19 (N.D. Tex. Oct. 9, 2013) (citing *Amsel*, 464 F. App'x at 400); *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (finding unreasonable the requested accommodation of an "indefinite leave of absence" so that the plaintiff might be able to return to work "at some uncertain point in the future."); *Rogers*, 87 F.3d at 759–60 (adopting the Fourth Circuit's holding that "[r]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected…") (alterations in original) (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)); *see also Johnson v. Children's Hosp. of Philadelphia*, No. CIV. A. 94-5698, 1995 U.S. Dist. LEXIS 7743, 1995 WL 338497, at *2 (E.D. Pa. June 5, 1995) (collecting cases in support of the proposition that "courts…have held that substantial and unpredictable absences…need not be accommodated.").

Even Cyrilien herself is unsure of what accommodation she sought. When she allegedly requested an accommodation,[2] Cyrilien "didn't ask specifically for anything" but she testified that she needed "a sit-down job where I'm, you know, pushing papers or whatever and not involved with a lot of inmates." Ex. A (Cyrilien Dep. 27:5–22). Despite never being released from her doctor to return to work, Cyrilien baldly asserts that TDCJ "could have placed me somewhere in a more secure area where I'm not dealing with inmates or in a hostile environment. They could have gave [sic] me a desk job, sitting somewhere at a desk job." *Id.* (Cyrilien Dep. 22:23–23:11). However, there is no evidence that this type of job existed within the area that Cyrilien lives at the time of her exhaustion, nor is there evidence she would even be qualified for such a position without a note clearing her to return to work. *See id.* (Cyrilien Dep. 45:9–11; 51:5–52:23) (stating that she did not check to see if she could apply for any desk positions with TDCJ and would need a work from home job due to COVID or someplace "not in a hazardous-duty job," but "they don't even have a TDCJ in the Cypress area if I was to return…"); *Id.* (Cyrilien Dep. 45:12–14) (stating that she hasn't applied for any other positions since she left TDCJ because she was "still recovering").

Where an employer would be required to create a new position to accommodate an employee's disability, the request is not reasonable. *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant."). Cyrilien bears the burden at this stage to "prov[e] that an available position exist[ed] that [s]he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). Cyrilien wholly fails to meet her burden. *See Gonzalez v. UPS*, No. 5:15-CV-986-RCL, 2018 U.S. Dist. LEXIS 167528, at *34–35 (W.D. Tex. Sep. 28, 2018). Because Cyrilien cannot present proof that an available position for which she qualified

---

[2] Although Cyrilien asserts she requested an accommodation, there is no record of that. *See* Ex. Q.

existed and was vacant at the time she exhausted her leave, Cyrilien's failure to accommodate claim must fail.

### 2. Discriminatory Discharge Claim

To establish a prima facie case of discrimination under the RA, a plaintiff must show that she was (1) disabled within the meaning of the RA, (2) subjected to an adverse action solely by reason of her disability, and (3) otherwise qualified for the program. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 504–05 & n.7 (5th Cir. 2002).

Here, as discussed earlier, there is no genuine issue of material fact that Cyrilien was not qualified for her job. As such, Cyrilien was not a "qualified individual" for whom the RA would apply, and no further analysis is necessary. Even if Cyrilien did qualify for her position, Cyrilien cannot produce sufficient evidence to overcome summary judgment that she was subject to termination *solely* by reason of her disability. Evidence shows that Cyrilien was separated from TDCJ because she exhausted all her leave time. Ex. N, O, R, & S. Cyrilien is not disputing that she exhausted all her sick and vacation leave, plus an extra 400 hours of donated sick pool time, plus 180 days of LWOP. Ex. A (Cyrilien 31:4–32:12). Because TDCJ had a legitimate, non-discriminatory reason to separate Cyrilien, she cannot show that it was solely due to her disability. As such, Cyrilien's discriminatory discharge claim must fail.

### B. Damages

Cyrilien seeks damages for loss of back pay, loss of front pay, punitive damages and compensatory damages for mental anguish. ECF No. 8 at 4. However, none of the damages she seeks are available to her.

### 1. Punitive and Compensatory Damages

The law is clear that punitive and compensatory damages for emotional distress are unavailable under § 504 of the RA. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 680 (5th Cir. 2020), *cert.*

*granted*, 141 S. Ct. 2882, 210 L. Ed. 2d 989 (2021), and *aff'd*, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022), *reh'g denied*, 142 S. Ct. 2853 (2022); *See Barnes v. Gorman*, 536 U.S. 181, 189, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002). Defendant is entitled to summary judgment on these damage claims.

### 2. Front Pay, Back Pay, and Failure to Mitigate

Cyrilien's failure to mitigate damages bars her claim for monetary damages. *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990) (under section 706(g) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable"), Title VII claimants have a statutory duty to minimize damages). The plaintiff must use reasonable diligence to obtain "substantially equivalent" employment. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982). Cyrilien made no effort to obtain substantially equivalent employment. Ex. A (Cyrilien Dep. 45:5–14) (stating that she has not applied for any other positions since she was separated from TDCJ). Therefore, summary judgment on front and back pay damages is appropriate and any monetary recovery should be barred. *Stephenson v. Nokia*, 2008 U.S. Dist. LEXIS 36574, 2008 WL 2669492, at *8; *Aikens v. Banana Republic, Inc.*, 877 F. Supp. 1031, 1040 (S.D. Tex. 1995) ("Because [plaintiff] has not reasonably or diligently sought employment substantially equivalent to her position at [defendant], she has wholly failed to mitigate her damages, thus barring any monetary recovery [front and back pay] in this case."); *Giles*, 245 F.3d at 489 (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937 (5th Cir. 1996) (recognizing that a front pay award "should reflect earnings in mitigation of damages" and district courts "must consider a [plaintiff's] failure to mitigate…damages in determining the extent to which, if at all, front pay is appropriate.")); *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir. 1989).

Additionally, Cyrilien is barred from an award of front pay because TDCJ is entitled to Eleventh Amendment immunity. Cyrilien's request for front pay is the precise type of monetary

damages that are unavailable against the government. The *Jones* case makes clear that "back pay, front pay, and other monetary relief remain unavailable." *Jones v. Texas Juv. Just. Dep't*, 646 F. App'x 374, 376–77 (5th Cir. 2016); *see also Edelman v. Jordan,* 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) ("[T]he claims for back pay . . . are barred by the Eleventh Amendment."); *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 698 (3d Cir. 1996) ("Plaintiffs' request for 'front pay' does not . . . fall within the boundaries of permissible relief defined by *Ex parte Young* and we therefore affirm the district court's holding that these claims are barred by the Eleventh Amendment."); *Berry v. Texas Woman's Univ.*, 528 F. Supp.3d 579, 599 (E.D. Tex. 2021) (noting that Eleventh Amendment immunity bars "claims for prospective relief that are the functional equivalent of money damages, *i.e.*, it is measured in terms of monetary loss resulting from a past breach of a legal duty"). TDCJ is entitled to sovereign immunity under the Eleventh Amendment against Plaintiff's claims of front pay.

## V. CONCLUSION

Cyrilien is unable to prove a prima facie case of discrimination under the RA because she did not qualify for her position at the time of separation. Moreover, TDCJ had a legitimate, non-retaliatory reason for her separation. Finally, Cyrilien is not entitled to any damages as a matter of law and due to her failure to mitigate. For the reasons set forth above, the Court should find in favor of TDCJ.

Respectfully Submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

13

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Briana M. Webb*
**BRIANA M. WEBB**
Assistant Attorney General
Attorney-in-Charge
Texas State Bar No. 24077883
Briana.Webb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE**

## NOTICE OF ELECTRONIC FILING

I, **BRIANA M. WEBB**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing, in accordance with the Electronic Case Files System of the Southern District of Texas, on this the 24th day of January, 2023.

*/s/ Briana M. Webb*
**BRIANA M. WEBB**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **BRIANA M. WEBB**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and forgoing, has been served via electronic mail, on this the 24th day of January, 2023, to all counsel of record.

*/s/ Briana M. Webb*
**BRIANA M. WEBB**
Assistant Attorney General